OPINION
BALES, Vice Chief Justice.
¶ 1 Arizona’s implied consent statute, AR.S. § 28-1321, outlines how law enforcement officers can obtain consent to blood and breath tests from persons arrested for driving under the influence (“DUI”) and provides consequences for arrestees who refuse to submit to a test. Against this backdrop, we address whether the Fourth Amendment to the United States Constitution requires that a juvenile arrestee’s consent be voluntary to allow a warrantless blood draw. We hold that it does and that the juvenile court properly ruled that evidence of a blood draw was inadmissible because the juvenile did not voluntarily consent.
I.
¶2 On February 17, 2012, Tyler B., a sixteen-year-old high school student, and two friends arrived late to school. A school monitor smelled marijuana on the boys and also saw drug paraphernalia in Tyler’s car. School officials detained the boys in separate rooms and contacted the sheriffs office.
¶ 3 A deputy sheriff soon arrived and read Miranda warnings to Tyler. In the presence of several school officials, Tyler admitted that he had driven his car to school after smoking marijuana and that he owned some of the drug paraphernalia in the car. The deputy informed Tyler that he was under arrest for DUI and other offenses. Tyler became agitated and the deputy placed him in handcuffs. The deputy left Tyler with the assistant principal for about ten minutes while retrieving a phlebotomy kit to do a blood draw.
¶ 4 When the deputy returned to the room, he saw that Tyler had calmed down, so he removed the handcuffs from the youth. He read Tyler an “implied consent admonition” twice, first verbatim and then in “plain English.” The admonition provided in relevant part:
Arizona law requires you to submit to and successfully complete tests of breath, blood or other bodily substance as chosen by the law enforcement officer to determine alcohol concentration or drug content. The law enforcement officer may require you to submit to two or more tests. You are required to successfully complete each of the tests.
If the test results are not available ... or indicate any drug defined in ARS 13-3401 or its metabolite, without a valid prescription, your Arizona driving privilege will be suspended for not less than 90 consecutive days.
If you refuse to submit or do not successfully complete the specified tests, your Arizona driving privilege will be suspended for 12 months, or for two years if there is a prior implied consent refusal, within the last 84 months, on your record. You are, therefore, required to submit to the specified tests.
Tyler agreed verbally and in writing to have his blood drawn, and the deputy drew two vials of Tyler’s blood.
¶ 5 The State charged Tyler with DUI. Tyler moved to suppress evidence of the blood draw, arguing that his consent had not been voluntary and that, as a minor, he lacked the legal capacity to consent. The juvenile court granted the motion, finding that the blood draw violated Arizona’s Parents’ Bih of Rights (“PBR”), AR.S. § 1-602, and, notwithstanding the PBR, that Tyler’s consent had been involuntary under the totality of the circumstances. The court relied in part on In re Andre M., in which this Court recognized the “increased susceptibility and vulnerability of juveniles” in assessing whether a juvenile’s confession was voluntary under the Fifth Amendment to the United States Constitution. 207 Ariz. 482, 485 ¶ 9, 88 P.3d 552, 555 (2004).
¶ 6 On the State’s petition for special action relief, the court of appeals reversed the juvenile court’s ruling. State v. Butler, 231 Ariz. 42, 45 ¶ 11, 290 P.3d 435, 438 (App. *87 2012). The court first held that the PBR did not apply because the deputy was acting within the scope of his official duties. Id. at 44 ¶ 6, 290 P.3d at 437. It then held that the Fifth Amendment did not apply because the blood was not testimonial evidence. Id. at 45 ¶ 10, 290 P.3d at 438. Stating that “the informed consent statute presents no Fourth Amendment issue,” the court of appeals held that the juvenile court abused its discretion in suppressing the blood draw evidence. Id. ¶ 10 n. 6.
¶ 7 We granted review because this case raises questions of first impression and statewide importance. We have jurisdiction under Article 6, Section 5(3) of Arizona’s Constitution and A.R.S. § 12-120.24.
II.
¶8 The Fourth Amendment provides, “The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated____” U.S. Const, amend. IV. Evidence obtained in violation of the Fourth Amendment is properly suppressed. Mapp v. Ohio, 367 U.S. 643, 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). Trial court rulings on motions to suppress are reviewed for abuse of discretion. See State v. Haus-ner, 230 Ariz. 60, 70 ¶ 23, 280 P.3d 604, 614 (2012). “We consider the evidence presented at the suppression hearing and view the facts in the light most favorable to sustaining the trial court’s ruling.” Id.
¶ 9 Tyler argues that a blood draw is a search subject to the Fourth Amendment and, to be valid, requires either a warrant or an exception such as voluntary consent. The State responds that every Arizona motorist gives “implied consent” under § 28-1321 and that tests administered under the statute are not subject to a Fourth Amendment volun-tariness analysis. The State further argues that “adult privileges carry adult responsibilities,” and thus juveniles should not be treated differently from adults in assessing the voluntariness of consent to a blood draw.
¶ 10 Contrary to the State’s argument, a compelled blood draw, even when administered pursuant to § 28-1321, is a search subject to the Fourth Amendment’s constraints. See Missouri v. McNeely, — U.S.-, 133 S.Ct. 1552, 1556, 185 L.Ed.2d 696 (2013) (holding that a compelled blood draw taken pursuant to Missouri’s implied consent law is subject to the Fourth Amendment’s restrictions on warrantless searches). “Such an invasion of bodily integrity implicates an individual’s ‘most personal and deep-rooted expectations of privacy.’ ” Id. at 1558 (quoting Winston v. Lee, 470 U.S. 753, 760, 105 S.Ct. 1611, 84 L.Ed.2d 662 (1985)).
¶ 11 McNeely also forecloses the State’s arguments that requiring warrants for blood draws will unduly burden law enforcement officials or render Arizona’s implied consent law meaningless. “In those drunk-driving investigations where police officers can reasonably obtain a warrant before a blood sample can be drawn without significantly undermining the efficacy of the search, the Fourth Amendment mandates that they do so.” Id. at 1561.
¶ 12 In general, under the Fourth Amendment, warrantless searches “are per se unreasonable ... subject only to a few specifically established and well-delineated exceptions.” Arizona v. Gant, 556 U.S. 332, 338, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009). One such exception is exigent circumstances, but the State has not argued that this exception authorized the blood draw here.
¶ 13 Consent can also allow a warrantless search, provided the consent is voluntary. Schneckloth v. Bustamonte, 412 U.S. 218, 226-28, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). Voluntariness is assessed from the totality of the circumstances. Id. at 227, 93 S.Ct. 2041. Relevant circumstances include the suspect’s age and intelligence as well as the length of detention. See id. at 226-27,229, 93 S.Ct. 2041.
¶ 14 We reject the State’s contention that age should be disregarded in assessing a juvenile’s consent to a blood draw. In various contexts, the law recognizes a juvenile’s age as a relevant consideration. See, e.g., J.D.B. v. North Carolina,-U.S.-, 131 S.Ct. 2394, 2399, 2406, 180 L.Ed.2d 310 (2011) (holding that child’s age is relevant, although not necessarily determinative, in as *88 sessing whether a child is in custody); Roper v. Simmons, 543 U.S. 551, 571-73, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005) (recognizing the “diminished culpability” of juveniles under 18 and holding that “[t]he differences between juvenile and adult offenders are too marked and well understood to risk allowing a youthful person to receive the death penalty”). Juveniles tend to possess less maturity and are “more vulnerable or susceptible to negative influences and outside pressures.” Id. at 569-70, 125 S.Ct. 1183. Courts should not blind themselves to this reality when assessing the voluntariness of consent to a blood draw.
¶ 15 Consent can be voluntary for purposes of the Fourth Amendment in circumstances that would not establish voluntariness under the Fifth Amendment. See Bustamonte, 412 U.S. at 234, 240, 93 S.Ct. 2041 (holding that, although Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), requires an arrestee to be advised of right to remain silent in order for waiver to be valid, knowledge of right to withhold consent is just one factor in determining voluntariness of a consent to search). But, when the accused is a juvenile, factors such as age and the presence of parents are properly considered when assessing the voluntariness of consent to a search, just as they are relevant in assessing the voluntariness of a confession. Cf. In re Andre M., 207 Ariz. at 485 ¶ 11, 88 P.3d at 555 (noting in the Fifth Amendment context that parents can “help ensure that a juvenile will not be intimidated, coerced or deceived”).
¶ 16 This Court has previously held that, for an officer to administer a test of breath or bodily fluids on an arrestee without a search warrant under § 28-1321, consent must be express. Carrillo v. Houser, 224 Ariz. 463, 463 ¶ 1, 232 P.3d 1245, 1245 (2010). Carrillo turned, however, on statutory grounds and did not address any constitutional issues. Id. at 467 ¶ 21, 232 P.3d at 1249.
¶ 17 The State unconvincingly argues that the “consent” in § 28-1321(A) either constitutes an exception to the warrant requirement or satisfies the Fourth Amendment’s requirement that consent be voluntary. We explained previously that “[t]he ‘consent’ by motorists referenced in subsection (A) does not always authorize warrantless testing of arrestees.” Carrillo, 224 Ariz. at 465 ¶ 10, 232 P.3d at 1247. Rather, the officer is directed to ask the arrestee to submit to the test, and the arrestee may then refuse by declining to expressly agree to take the test. AR.S. § 28-1321(B); Carrillo, 224 Ariz. at 465 ¶ 11, 232 P.3d at 1247. If the arrestee refuses, the statute specifies that a warrant is required to administer the test and the arrestee shall have his license suspended. A.R.S. § 28-1321(D); Carrillo, 224 Ariz. at 465 ¶ 11, 232 P.3d at 1247.
¶ 18 We hold now that, independent of § 28-1321, the Fourth Amendment requires an arrestee’s consent to be voluntary to justify a warrantless blood draw. If the arrestee is a juvenile, the youth’s age and a parent’s presence are relevant, though not necessarily determinative, factors that courts should consider in assessing whether consent was voluntary under the totality of the circumstances.
¶ 19 Voluntariness is a question of fact, Bustamonte, 412 U.S. at 248-49, 93 S.Ct. 2041, and “[w]e review the trial court’s voluntariness finding for abuse of discretion,” State v. Cota, 229 Ariz. 136, 144 ¶ 22, 272 P.3d 1027, 1035 (2012) (reviewing voluntariness of confession). The State has the burden of proving that consent to a search is “freely and voluntarily given.” Bumper v. North Carolina, 391 U.S. 543, 548-50, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968).
¶20 Although Tyler did not testify at the suppression hearing, sufficient evidence supports the juvenile court’s finding that he did not voluntarily consent to the blood draw. At the time, Tyler was nearly seventeen and in eleventh grade. He had been arrested once previously, but not adjudicated delinquent. Tyler was detained for about two hours in a school room in the presence of school officials and a deputy. Neither of his parents was present. Tyler initially was shaking and visibly nervous. When he became loud and upset after being told he was being arrested, the deputy placed him in handcuffs until he calmed down. A *89 second deputy sheriff arrived before the blood draw was taken. After removing the handcuffs, the first deputy read the implied consent admonition to Tyler, once verbatim and once in what the deputy termed “plain English,” concluding with the statement, “You are, therefore, required to submit to the specified tests.” Tyler then assented to the blood draw.
¶ 21 Viewing the facts in the light most favorable to sustaining the ruling below, we hold that the juvenile court did not abuse its discretion by ruling that Tyler’s consent was involuntary and granting the motion to suppress. We decline to address Tyler’s arguments that he lacked the legal capacity to consent and that the Arizona Constitution provides greater protection than the Fourth Amendment in this context.
III.
¶ 22 We also decline to address Tyler’s argument that the blood draw must be suppressed because it violated the PBR. The statute provides that parents have a “right to consent in writing before any record of the minor child’s blood or deoxyribonucleic acid is created, stored or shared.” AR.S. § 1-602(A)(8). The PBR, however, concerns the rights of parents and does not purport to affect a juvenile’s right to consent to a search. See id. § 1-602(A) (referencing “parental rights”). Nor does the statute provide that evidence will be suppressed if the statute is violated. See id. § 1-602. Even if the blood draw was taken in violation of the rights of Tyler’s parents (an issue we do not decide), Tyler would not have standing to argue that this violation required suppression of the blood draw evidence. Cf. Rakas v. Illinois, 439 U.S. 128, 133-34, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978) (holding that person lacks standing to suppress evidence seized in violation of another’s Fourth Amendment rights).
IV.
¶ 23 For the foregoing reasons, we reverse the decision of the court of appeals and remand the ease to the superior court for proceedings consistent with this opinion.
CONCURRING: REBECCA WHITE BERCH, Chief Justice, ROBERT M. BRUTINEL and ANN A. SCOTT TIMMER, Justices.
PE LANDER, Justice,